# EXHIBIT 1

## Summons and Complaint

 **CT Corporation**

**Service of Process Transmittal**
07/01/2020
CT Log Number 537875849

**TO:** Christopher R. Clegg, Executive VP, General Counsel & Secty.
Aleris International, Inc
25825 Science Park Dr Ste 400
Beachwood, OH 44122-7392

**RE:** **Process Served in Kentucky**

**FOR:** ALERIS ROLLED PRODUCTS, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | GLEN MURPHY, Pltf. vs. ALERIS ROLLED PRODUCTS LLC, Dft. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified Case # 20CI00050 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Frankfort, KY |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 07/01/2020 postmarked on 06/24/2020 |
| **JURISDICTION SERVED :** | Kentucky |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780109025871 |
| | Image SOP |
| | Email Notification,  Christopher R. Clegg  chris.clegg@aleris.com |
| | Email Notification,  Kerrie Krizner  kerrie.krizner@aleris.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 208 South LaSalle Street Suite 814 Chicago, IL 60604 |
| **For Questions:** | 866-331-2303 CentralTeam1@wolterskluwer.com |

Page 1 of  1 / SD

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



NOEL J. QUINN
CIRCUIT COURT CLERK
HANCOCK CIRCUIT & D
HANCOCK COUNTY JUD
310 HAWESVILLE SCHO
HAWESVILLE, KENTUCK

**CERTIFIED MAIL**

7019 0140 0000 9257 5442



FIRST-CLASS

US POSTAGE
PITNEY BOWES

02 7H          $ 012.80⁰
0001260362   JUN 24 2020
MAILED FROM ZIP CODE 42348

CT CORPORATION SYSTEM
306 W. MAIN STREET
FRANKFORT, KY    40601



Michael T. Boling, Hancock Circuit Clerk
310 Hawesville School Drive, P.O. Box 250
Hawesville, KY 42348-0250

CT CORPORATION SYSTEM
306 W. MAIN STREET
FRANKFORT, KY 40601



# KCOJ eFiling Cover Sheet

Case Number: 20-CI-00050

Envelope Number: 2547635

Package Retrieval Number: 254763517811596@00000019844

Service by: Certified Mail

Service Fee:  $ 0.00

Postage Fee: $ 12.80

The attached documents were generated via the Kentucky Court of Justice eFiling system. For more information on eFiling, go to http://courts.ky.gov/efiling.

Generated: 6/24/2020 2:54:57 PM

Package:000001 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000001 of 000019

| AOC-E-105    Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br>**CIVIL SUMMONS** | Case #: **20-CI-00050**<br>Court:   **CIRCUIT**<br>County: **HANCOCK** |

*Plantiff,* MURPHY, GLEN VS. ALERIS ROLLED PRODUCTS LLC, *Defendant*

    TO: **CT CORPORATION SYSTEM**
            **306 W. MAIN STREET**
            **FRANKFORT, KY 40601**

Memo: Related party is ALERIS ROLLED PRODUCTS LLC

The Commonwealth of Kentucky to Defendant:
**ALERIS ROLLED PRODUCTS LLC**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

                               *Michael L. Bly*
                               Hancock Circuit Clerk
                               Date: 6/24/2020
                            *by Rachel Payne*

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

Date: _____, 20 _____

                                           _____
                                            Served By

                                         _____
                                            Title



Page 1 of 1

*eFiled*

Package:000002 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000002 of 000019

# COMMONWEALTH OF KENTUCKY
## HANCOCK COUNTY CIRCUIT COURT
### CIVIL ACTION NO.: 20-CI-50

## VERIFIED COMPLAINT

**GLEN MURPHY**                                                    **PLAINTIFF**
**808 FREDERICA STREET**
**APT 2**
**OWENSBORO, KY 42301**

**v.**

**ALERIS ROLLED PRODUCTS LLC**                        **DEFENDANT**
**25825 SCIENCE PARK DR.**
**SUITE 400**
**BEACHWOOD, OH 44122**

      **Registered Agent:**
      **C T CORPORATION SYSTEM**
      **306 W MAIN ST**
      **SUITE 512**
      **FRANKFORT, KY 40601**

**\* \* \* \*   \* \* \* \*   \* \* \***

Comes now the Plaintiff, Glen Murphy ("Mr. Murphy" or "Plaintiff"), by and through

counsel, and for his Complaint against Aleris Rolled Products LLC ("Aleris" or "Defendant"),

states as follows:

## JURISDICTION AND VENUE

1. Mr. Murphy is a resident of Owensboro, Kentucky. As such, he is a resident of Daviess

   County, Kentucky.

2. Aleris is a Delaware Corporation with its principal place of business in Ohio.

3. Aleris submits itself to the jurisdiction of the court under KRS § 454.210, by transacting

   any business in the Commonwealth of Kentucky. Specifically, Aleris operates a facility

   in Lewisport, Kentucky.



4. Mr. Murphy's cause of action arises out of events that took place in Lewisport, Kentucky.

5. Mr. Murphy's damages exceed the threshold requirement of five-thousand dollars ($5,000.00) and, therefore, this Court has proper jurisdiction over the matter.

6. Plaintiff's causes of actions arise under the Kentucky Civil Rights Act, as codified in KRS Chapter 344. As such, pursuant to KRS § 344.450 this action must be and is being brought in the Circuit Court in the county in which the alleged action arose.

## FACTUAL ALLEGATIONS

7. In 2012, Mr. Murphy began working for Aleris.

8. Mr. Murphy's date of birth is July 13, 1953.

9. Mr. Murphy is sixty-six (66) years old.

10. Mr. Murphy is African American.

11. Mr. Murphy holds a master's degree in Operations Management.

12. Sometime in 2014, Mr. Murphy filed a complaint for harassment against his Superintendent/boss. His complaint was ignored, and he was continuously harassed by his boss for the following year.

13. In the summer of 2015, Mr. Murphy went to Human Resources ("HR") and filed another complaint against his boss. HR was surprised to hear about the complaint, so HR interviewed Mr. Murphy, but he never received a resolution from that interview. Mr. Murphy's boss was removed from her position but was given a newly created position as a Superintendent for the same department in a different area with no direct reports.

14. As a result of his complaint, Mr. Murphy was moved to a new department a week later. Mr. Murphy was moved from South Casting to North Casting. This was a direct act of retaliation against Mr. Murphy for filing the complaint against his boss.

15. Even after his move, he still felt backlash as a result of him filing the complaint against his boss.

16. As a result of feeling backlash, Mr. Murphy decided to apply for a new higher position within the department. He applied for the position, did a great job in the interview, and yet still, a younger, Caucasian man, who was less qualified than Mr. Murphy got the position. This was only three (3) months after Mr. Murphy filed a complaint against his boss. This action was because of Mr. Murphy's race and Mr. Murphy's filing of a complaint against his boss. Aleris did not want an African American man to move up in the ranks of their company. Even further, Aleris did not want an African American man who they viewed as a troublemaker to move up in the ranks of their company. Aleris wanted an African American man who would sit quietly and put up with the abuse that their management team would subject him to.

17. After not getting the aforementioned job, Mr. Murphy was still feeling backlash, so he applied for a lower paying job in a different department just to get away from the backlash. He received this job and was now an AOS (Aleris Operating System) Training Coordinator.

18. As an AOS Training Coordinator, Mr. Murphy trained and taught employees about Aleris's Six Sigma program.

19. In 2018, Mr. Murphy was the first in his department to go to a two (2) week training and receive his Six Sigma Green Belt.

20. Also, in 2018, Mr. Murphy went to Detroit to train Aleris directors and scientists on Six Sigma White and Yellow Belts. Mr. Murphy completed the training for the two Belts in one (1) week. This is unheard of because the classes generally need more three (3) or

Package:000005 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000005 of 000019

more instructors to finish at that rate. Mr. Murphy asked for help and only a newly hired associate offered to help.

21. Mr. Murphy received accolades for his performance during the training in Detroit.

22. During Mr. Murphy's time as an AOS Training Coordinator he trained over six-hundred (600) people to get their White Belts and over one-hundred (100) to get their Yellow Belts. Mr. Murphy also assisted in training Green Belts and helped certify more Yellow Belts than all of the other plants combined.

23. While Mr. Murphy was working as the first and only Training Coordinator, a position became available to move up to be AOS Manager. During the interview, Mr. Murphy presented documentation of projects that he completed at other automotive companies that exceeded the requirements of a Black Belt. However, the company decided that Eric Gray, a younger, Caucasian male with a Black Belt from a different company should be the one to get the promotion. However, Jeff Willis, the HR manager, told Mr. Murphy that the reason he was passed over is because he was "doing such a good job in his current position that they did not want to lose him."

24. Further, Mr. Murphy exceeded training projections that the company set out for him.

25. At the end of the year at Aleris, every employee is evaluated based on performance for raises. In 2018, Mr. Murphy only received a 1.5% raise – despite all of the aforementioned accomplishments that Mr. Murphy achieved in 2018.

26. Mr. Murphy inquired as to why he only received a 1.5% bonus. His manager, Eric Gray, told him that one evaluator gave him a "1," which is the lowest grade that he could get on the evaluation. Eric Gray further told him that he was not the one who evaluated him, and that it was other people who Mr. Murphy did not directly work for.

Package:000006 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000006 of 000019

27. However, Mr. Gray did evaluate every other member of the team that Mr. Murphy worked on. This action by Mr. Gray, and Aleris was discriminatory to Mr. Murphy because of his age and race.

28. Due to his evaluation score, Mr. Murphy went to HR to set up a meeting with the directors who gave him the scores. Mr. Murphy's purpose in setting up this meeting was to figure out why he got such low scores and to better himself with that knowledge.

29. HR did not allow him to attend the meeting with the directors. HR told Mr. Murphy that the Plant Manager gave him such a low score because of the training he was doing. The Plant Manager cited one instance where Mr. Murphy was teaching an eight (8) hour course and he stepped out of the room for fifteen (15) minutes. Someone replaced him for those fifteen (15) minutes, and apparently it was reported to the Plant Manager by one (1) employee in that training session that the employee "got more out of those fifteen (15) minutes than they did in the whole eight (8) hours."

30. Mr. Murphy knows that this is a discriminatory action in an attempt to force him out of his job because he always takes benefits and concerns feedback at the end of each training session. He would always get a lot of benefits, and very few concerns.

31. Further, Mr. Murphy was passed over for other promotions due to discriminatory practices by Aleris. Mr. Murphy was in training to get his Six Sigma Black Belt. Mr. Murphy had to complete a project to complete his Black Belt training. Two (2) days before he was set to give a report about his project at the last training session, Eric Gray told him that the Plant Manager and Executive Group did not want him to work on his project anymore. The project was for his training but was also assigned to Mr. Murphy by his manager.

Package:000007 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000007 of 000019

32. Mr. Murphy went to his Black Belt class without his completed project. This created embarrassment for Mr. Murphy because he had to tell the class that he did not have a completed project due to it being discontinued. Further, he had no project to report on.

33. In order to complete the Black Belt class, you needed to take and subsequently pass a test. The test consisted of a "practical" portion and a "theoretical" portion. To prepare for the test, each student in the class was given a coach. Mr. Murphy's coach was Chip Carpenter, who was previously Mr. Murphy's training assistant. Chip Carpenter's training sessions were never of any help to Mr. Murphy, and eventually Chip Carpenter stopped coming to the meetings for Mr. Murphy's aforementioned project. All of the other classmates of Mr. Murphy from Lewisport were Caucasian, and they were all given a Master Black Belt for a coach. After Mr. Murphy realized he wasn't getting the help he needed, Mr. Murphy requested the Master Black Belt to be assigned to him but was denied.

34. In addition, Mr. Murphy's questions were never answered by Chip Carpenter. For example, there was a portion of the test that dealt with "MiniTab Software," which is basically statistical analysis software. Mr. Murphy needed help with that section, but Chip Carpenter had trouble answering any of his questions because he did not understand how to work the MiniTab Software himself.

35. Mr. Murphy found out that as a lack of help from his coach, he failed the test. Mr. Murphy asked what grade he received on the test, and Aleris would not tell him. Aleris only told him that he failed.

36. This was also the first time that Aleris had ever offered Black Belt training, so they made up the rules as they went along. Mr. Murphy was told that he could take a retest if he took

Package:000008 of 000019

Presiding Judge: HON. TIM R. COLEMAN (63837'1)

Package : 000008 of 000019

it within a certain period of time. Then, following that, if he got a 10% improvement on his retest but did not get an 80%, that he could retake the test again but needing a 90% to pass the next time.

37. Mr. Murphy retook the test and failed. He was told that he only improved by 7%. At this point, Aleris told him what his original grade was. Aleris told him that he got an 81% on the practical portion, and a lower score on the theoretical so his total score was below 80%. Had Mr. Murphy originally known that, he would have been able to better focus his studies. Aleris did not want to tell him that because they did not want an older, African American male to be eligible to apply for higher positions within their company.

38. Mr. Murphy later discovered that Chip Carpenter was not helping him with the training because he was in the process of applying for a job as the head of training for Aleris in North America, a position for which you need a Six Sigma Black Belt. It would have been a natural progression for Mr. Murphy to be considered for that position because of all of his experience. Further, Chip Carpenter, and Eric Gray were given Black Belt status after taking an abbreviated test without needing to complete any projects. Every other Black Belt candidate had to take a longer test, and complete two (2) Black Belt projects.

39. Also, in December of 2018, Mr. Murphy was called into the Plant Manager's office and was told that his job was being eliminated because Chip Carpenter was going to be taking over all of his training, and Todd Bradshaw would be taking over the White Belt training at Lewisport when Chip Carpenter was offsite. During 2019, the company's training goals, and Belt certifications were not met. When Mr. Murphy was handling the training, the goals were always met.

Package:000009 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000009 of 000019

40. Mr. Murphy was transferred to the Finishing Department where he was an AOS Specialist.

41. During Mr. Murphy's first week in Finishing he was further discriminated against because of his age and race. In Finishing, Mr. Murphy shared a desk area with the Quality Manager. The Quality Manager asked Mr. Murphy how old he was. Mr. Murphy told him that he was sixty-five (65). The Quality Manager laughed at Mr. Murphy when he said his age.

42. A day or two after this conversation, Mr. Murphy was moved from Finishing to the Core department as their AOS Specialist. This meant that Mr. Murphy was moved out back to a trailer with no office phone. This move was not posted, and all other moves are always posted. Mr. Murphy asked Eric Gray why he was reassigned so quickly and was told that it was "political." It was not political; however, it was discriminatory.

43. Further, in Mr. Murphy's time at Aleris, he is frequently moved from office space to office space and he often gets the worst desks in the office. For example, when Mr. Murphy first went to AOS he was sat in the same room as a conference table, but all new hires got their own offices.

44. Another example is when Mr. Murphy designed the new office layout for the AOS team. During the construction, Mr. Murphy placed his desk in a room and when he came in someone had taken his desk and dumped all of the contents of it on the floor. Aleris told him that they meant to pick up two empty desks (which were in plain sight across from Mr. Murphy's desk) to remove them, but that is not the case.

45. After the remodel was done, Mr. Murphy discovered that his new office had been repurposed for another department.

Package:000010 of 000019

Presiding Judge: HON. TIM R. COLEMAN (63837'1)

Package : 000010 of 000019

46. Mr. Murphy was a good employee, while in North and South Casting, he came up with a project to save the company a total of $160,000 per year.

47. Mr. Murphy also received a CEO award for another team improvement.

48. But none of these things mattered to Aleris, as they further discriminated against Mr. Murphy because of his age and his race. Another example of discrimination came in June of 2019. There was a big project for Mr. Murphy's team. Everyone else on his team received an email telling them about a meeting for the project. Mr. Murphy did not receive this email, but he figured it was an oversight and attended the meeting anyway. At the meeting, the manager delineated tasks to everyone except for Mr. Murphy and another employee. The other employee got the invitation to the meeting and was told that he was going to be included later on. However, Mr. Murphy was not.

49. Mr. Murphy asked why he was not being included in the project, as the project would be important to end of evaluations and raises. Mr. Murphy's manager told him it was because Mr. Murphy was "too busy." In the weeks prior to the meeting, Aleris had assigned Mr. Murphy several small tasks in order to make him busier than he was to exclude him from the project.

50. Also, at the end of the project, the team had a celebratory dinner. In a morning team meeting the manager, Mandy Stevens, announced that the only requirement to attend the dinner was that you had to play a small role in completing the project. Everyone at the meeting knew that Mr. Murphy was the only person on his team that did not have a role in the project, so he was not invited to the dinner. Mr. Murphy contends that this action was in retaliation for him filing his EEOC complaint against Aleris.

Package:000011 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000011 of 000019

51. In response to Mr. Murphy filing his EEOC complaint, and his counsel sending a letter to Aleris, Aleris has been doing everything in their power to prove that they were not discriminating against Mr. Murphy. Aleris has gone as far as putting Mr. Murphy's health at risk during the COVID-19 pandemic. For example, in March, Aleris asked their employees to come up with a detailed plan to work from home for the next two (2) weeks. Mr. Murphy asked for three (3) days at home and two (2) days at work because he is sixty-six (66) and is also a smoker, so he is very high risk. Mr. Murphy's plan was denied, and he instead had to work from home on two (2) days and at the facility on three (3) days. This is the same plan that everyone else on the team was issued except for another member who is above sixty (60) but younger than Mr. Murphy. The other member of the team gets four (4) days at home and one (1) at the facility.

## COUNT I. DISCRIMINATION BASED ON RACE

52. Mr. Murphy hereby incorporates each and every allegation of paragraphs one (1) through fifty-one (51), as if fully set forth with particularity herein.

53. Pursuant to KRS § 344.040, it is unlawful for an employer to discriminate against any individual because of the individual's race, color, religion, national origin, sex, or age forty (40) and over.

54. Aleris is an employer pursuant to KRS § 344.030

55. Mr. Murphy is an adult African American male and is a member of a protected class.

56. Mr. Murphy was qualified for the positions that he held, having a master's degree, and Six Sigma certifications.

57. Mr. Murphy was treated differently than similarly situated employees who are Caucasian. Mr. Murphy was discriminated against based on his race on numerous occasions.

Package:000012 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000012 of 000019

58. For example, Mr. Murphy frequently was moved from desk to desk, he was left out of big projects, and he was passed over for promotions. All of these things are directly contrary to what is done with Caucasian employees.

59. These actions taken by Aleris were due to Mr. Murphy's race, are in violation of KRS § 344 and establish a *prima facie* case of discrimination against Aleris.

60. Mr. Murphy, having shown that he was treated differently because of his race, to his detriment, has suffered, and will continue to suffer, monetary losses based on Aleris's actions.

## COUNT II. DISCRIMINATION BASED ON AGE

61. Mr. Murphy hereby incorporates each and every allegation of paragraphs one (1) through sixty (60), as if fully set forth with particularity herein.

62. KRS § 344.040(1)(a) makes it unlawful for an employer, "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's ... age forty (40) and over."

63. In Kentucky, "there are two paths for a plaintiff seeking to establish an age discrimination case. One path consists of direct evidence of discriminatory animus." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005). The other path is establishing a *prima facie* case of age discrimination where Plaintiff "(1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which they were discharged, and (4) was replaced by a person outside the protected class." *Id.* at 496.

Package : 000013 of 000019    Presiding Judge: HON. TIM R. COLEMAN (638371)    Package : 000013 of 000019

64. Aleris openly discriminated against Mr. Murphy because of his age. For example, the Quality Manager at Aleris asked Mr. Murphy how old he was, when Mr. Murphy replied, the Quality Manager laughed at him – then two (2) days later he was moved to a new department. Mr. Murphy inquired as to why and was told it was "political."

65. As stated previously, Mr. Murphy's date of birth is July 13, 1953.

66. As an individual over the age of forty (40) Mr. Murphy is a member of a protected class.

67. Mr. Murphy was not discharged, but he did face adverse employment actions, when he was moved from department to department.

68. Each person who replaced Mr. Murphy was significantly younger than him.

## COUNT III. HOSTILE WORK ENVIRONMENT

69. Mr. Murphy hereby incorporates each and every allegation of paragraphs one (1) through sixty-eight (68), as if fully set forth with particularity herein.

70. In Kentucky, to establish a *prima facie* case of hostile work environment, Plaintiff must show that (1) he is a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment had the effect of unreasonably interfering with his work performance by creating intimidating, hostile, or offensive work environment; and (5) the existence of respondent superior liability. *Moore v. Thomas*, 2000 U.S. Dist. LEXIS 22606 (W.D. Ky. Feb. 16, 2000).

71. Mr. Murphy, as an adult African American male, is a member of a protected class.

72. Mr. Murphy was subjected to unwelcomed racial harassment on multiple occasions. For example, Mr. Murphy had the contents of his desk dumped on the floor because he is an African American, he also was placed in a trailer in the back with no office phone because he is an African American.

73. Mr. Murphy was subjected to unwelcomed harassment on the basis of his race. Similarly situated Caucasian employees were not subjected to the same harassment and antics.

74. The harassment unreasonably interfered with Mr. Murphy's work performance by creating and/or condoning an intimidating, hostile, or offensive work environment. For example, Mr. Murphy never knew when he was going to be moved to a new office, or left out of a project simply for being African American

75. Respondent superior liability theorizes that when one acts through the agency of another, he is himself acting and thus responsible for the acts of his agent. *Brooks v. Grams*, 289 S.W.3d 208, 211 (Ky. Ct. App. 2008). "When an agent fails in any duty which he owes a third party or the public generally, the principal is responsible for the future." *Smith v. Smith*, 333 S.W.2d 503, 504 (Ky. 1960). Under these circumstances, an employer is strictly liable for damages resulting from the tortious acts of his employees. *Patterson v. Blair*, 172 S.W.3d 361, 364 (Ky. 2005).

76. In the current case, Aleris has acted in a tortious manner. Through the theory of respondent superior liability, Aleris is liable for such actions.

## COUNT IV. RETALIATION

77. Mr. Murphy hereby incorporates each and every allegation of paragraphs one (1) through seventy-six (76), as if fully set forth with particularity herein.

78. Pursuant to the KCRA, as codified in KRS Chapter 344, it is unlawful for an employer and its employees, agents, and/or representatives to retaliate against an individual because he has opposed a practice declared unlawful by KRS Chapter 344.

79. KRS § 344.280 (1) makes it unlawful for an employer or person to retaliate or discriminate in any manner against a person because he has opposed a practice declared

Package:000019 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000015 of 000019

unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter. A claim for unlawful retaliation requires the plaintiff to first establish a *prima facie* case of retaliation which consists of showing that: (1) he engaged in an activity protected by (the KCRA); (2) that exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the activity engaged in the defendant employer's act. *Brooks v. Lexington-Fayette Urban Cty. Housing Authority*, 132 S.W.3d 790, 803 (Ky. 2004).

80. KRS § 344.030 defines "employer" for the purposes of KRS § 344.280 as "a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks" during either the same year as the alleged unlawful discrimination or during the preceding year. Defendant, Aleris is an employer pursuant to this statute.

81. KRS § 344.040 protects an employee from termination because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker.

82. Mr. Murphy is a member of a class protected by KRS § 344 as a sixty-six (66) year old, African American male. As such, he was engaged in a protected activity when he filed a complaint to HR for harassment.

83. Aleris knew of Mr. Murphy's exercise of his civil rights because their HR department interviewed him about the claim.

Package:000016 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000016 of 000019

84. Aleris took materially adverse employment actions against Mr. Murphy by moving him to a new area and continuing to harass Mr. Murphy to the point where he needed to apply for a lower paying position to escape the harassment.

85. There was a causal connection between Mr. Murphy's being moved and harassed, as prior to his complaint there were no issues of him working in North Casting.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Murphy, prays that this Court:

1. Declare that Aleris's conduct is in violation of Mr. Murphy's rights and;

2. Award Mr. Murphy compensatory damages in such amounts as shall be proven at trial for his economic and other losses;

3. Award Mr. Murphy back pay and/or damages equivalent to his lost wages from being unjustly skipped for a promotion;

4. Award Mr. Murphy damages in an amount to be proven at trial for the humiliation, embarrassment, personal indignity, apprehension about his future, emotional distress, and mental anguish which Aleris caused Mr. Murphy by their illegal actions toward him.

5. Award Mr. Murphy costs, interests, and attorney's fees expended herein;

6. Grant Mr. Murphy such further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff, Mr. Murphy, demands a jury to try all issues triable by jury.

Respectfully submitted,

/s/ Samuel G. Hayward
Samuel G. Hayward
ADAMS HAYWARD & WELSH
4036 Preston Highway
Louisville, Kentucky 40213
(502) 366-6456
samuelghayward@hotmail.com

Package:000018 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000018 of 000019

## **VERIFICATION**

I have read the foregoing statements in the Verified Complaint and they are true and accurate to the best of my knowledge and belief.



Glen Murphy

COMMONWEALTH OF KENTUCKY     )
                                                          )
COUNTY OF _Daviess_                       )

Subscribed and sworn to before me by GLEN MURPHY, this _17th_ day of _June_, 2020.

Ricky Morphew
Notary Public, ID No. 583384
State at Large, Kentucky
My Commission Expires on July 21, 2021

NOTARY,
STATE-AT-LARGE, KENTUCKY

My Commission Expires: _7/21/2021_

Package:000019 of 000019

Presiding Judge: HON. TIM R. COLEMAN (638371)

Package : 000019 of 000019